## JOHN BLISS & another *vs.* WILLIAM ROPES & others.

In an action against the owners of a vessel to recover for the loss of a chronometer furnished to her master in a foreign port, the plaintiffs may recover by proving that the chronometer was reasonably fit and proper, having regard to the exigencies and requirements of the vessel for the port where she was lying and the voyage on which she was bound· and it is erroneous to instruct the jury that the plaintiffs must also satisfy them that it was a part of the apparel or furniture of the vessel to be furnished by the owners.

CONTRACT brought against the owners of the bark Lauretta, to recover the value of a chronometer let to hire oy the plaintiffs for the use of the bark, by a contract made with the master, who was one of the owners. The bark belonged to a port in the state of Maine, but at the time of the contract declared on was lying in the port of New York.

At the trial in the superior court, before *Morton*, J., it appeared that the Lauretta proceeded on a voyage, and was burnt by the steamer Alabama; and the chronometer was lost by a risk undertaken according to the terms of the contract, by the borrowers. The voyage was prosecuted on behalf of the owners of the Lauretta, but the defence was that the master had no authority to contract with the plaintiffs in the name and on behalf of the vessel and owners, as he assumed to do in this instance. The evidence for the plaintiffs tended to show that chronometers were reasonably fit and proper to be supplied to such a vessel as the Lauretta for the purposes of her voyage, and that no prudent owner would allow his vessel to go to sea without one. Testimony as to general usage and custom of New York was also adduced by both parties : that on behalf of the plaintiffs tended to show that the chronometer was a part of the ship's furniture and apparel, and that it was furnished by purchase or hire, at the expense of the vessel and owners; while that on behalf of the defendants tended to show that it was not a part of the ship's apparel or furniture, but one of the captain's instruments or tools of trade, and furnished ordinarily by him.

The plaintiffs requested the court to rule that, the Lauretta

being away from her home port, if the jury were satisfied that chronometers were, in the legal sense of the term, necessaries, as applied to the vessel and her intended voyage, then the master had implied authority to bind his owners for sucn necessaries supplied to the vessel in good faith; that if this general rule was or could be controlled by a usage or custom, requiring the master to procure a chronometer, although a necessary, for the vessel, at his own expense solely, the burden of proof was on the defendants to establish affirmatively such a prevailing usage or custom as to chronometers. But the judge declined so to rule, and instructed the jury that the burden of proof was on the plaintiffs to satisfy them, not only that the chronometer was reasonably fit and proper to be supplied to a vessel for the purposes of her voyage, but that it was a part of the apparel or furniture of the vessel, to be furnished by the owners.

The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions.

*J. Lathrop & B. G. Gray,* for the plaintiffs, cited *Webster* v. *Seekamp,* 4 B. & Ald. 352; *Ship Fortitude,* 3 Sumner, 228; *Flanders* v. *Merritt,* 3 Barb. 201; *Speering* v. *Degrave,* 2 Vern. 643; *Sargent* v. *Wording,* 46 Maine, 464; *Pope* v. *Nickerson,* 3 Story R. 465; *Dickinson* v. *Gay,* 7 Allen, 32; *Kohler* v. *Wright,* 7 Bosw. 328; *Wood* v. *Wood,* 1 C. & P. 59; *The Paragon,* Ware, 322; *United States* v. *Buchanan,* 8 How. 102; *Burchard* v. *Tapscott,* 3 Duer R. 363; *Winsor* v. *Sampson,* Sprague's Decis. 550; *Matthews* v. *Bliss,* 22 Pick. 48, 53; *Collins* v. *Denison,* 12 Met. 549.

*J. C. Ropes,* for the defendants. The instruction of the court was correct. If the chronometer was not in legal terms a necessary, the owners were not liable. But nothing for which owners of vessels are not liable is, in legal terms, a necessary. In order to prove the chronometer a necessary, the plaintiffs must prove that it is something for which owners of vessels are liable, or, in other words, that it is a part of the apparel or furniture of the vessel, furnished by the owners. *Richardson* v *Clark,* 15 Maine, 421. The point of conflict was on the question

whether the chronometer was a part of the ship's furniture or apparel, or one of the captain's tools. If of the latter class, it was not a necessary. The term " necessaries" has always been held to refer to things pertaining to the vessel, to her furniture, apparel, tackle, &c. Other things, equally necessaries, in the ordinary acceptation of the word, have always been considered as belonging to the captain and not as necessaries for the vessel. The plaintiffs must prove that chronometers belong to the class of necessaries for vessels in the present legal acceptation of the term. 1 Parsons Mar. Law, 379, 383. *Duff* v. *Mackenzie,* 3 C. B. (N. S.) 16. *Wood* v. *O'Kelley,* 8 Cush. 406.

BIGELOW, C. J. Upon careful consideration, we are of opinion that the rulings and instructions given at the trial of this case cannot be supported, and that it is necessary to send it to a new trial.

In the first place, the instructions in regard to the authority of the master to bind his owners in a foreign port seem to us to have been put in a form which was inaccurate and calculated to mislead the minds of the jury. The rule of law on this subject is well settled and familiar. The master is the agent of the owners for the purpose of obtaining repairs and supplies for the ship in a foreign port, in the absence of the owner; but his authority as such agent is not unlimited. He can only procure such supplies and repairs as are, properly speaking, necessary for the ship; that is, the repairs and supplies are to be such as are reasonably fit and proper, having regard to the exigencies and requirements of the ship for the port where she is lying and the voyage on which she is bound. No other rule than this is laid down in any adjudicated case or approved text writer, ancient or modern. Abbott on Shipping, 135. *The Fortitude,* 3 Sumner, 233. *Edwards* v. *Havill,* 14 C. B. 107. *Mitcheson* v. *Oliver,* 5 El. & Bl. 419. The rule of the civil law is the same. Digest, lib. 14, tit. 1, art. 1, § 7. It is nowhere said that this authority of the master is limited to the purchase or procurement of any particular kind or class of supplies. On the contrary, it is uniformly he'd that it embraces everything which a prudent

man would deem proper and necessary to be done or supplied under the circumstances. The error in the instructions given at the trial was in putting a restriction or limitation on the authority of the master not sanctioned by this rule of law. The jury were told that the defendants could not be charged unless the plaintiffs satisfied them, not only that the chronometer furnished by the plaintiffs was reasonably fit and proper for the vessel for the purposes of the voyage, but also that it was part of the apparel or furniture of the vessel to be furnished by the owners. This introduced a new element in the rule regulating and governing the authority of the master to bind the owners. It limited it to the procurement of that which constituted a part of the apparel or furniture of the vessel. Although necessary and proper for the use of the bark, the jury could not have found a verdict for the use of the chronometer, unless they were also of opinion that it constituted part of the apparel or furniture of such a vessel. Many things may be necessary for a vessel which do not, in a strict and technical sense, form a part of her apparel or furniture. An article may be requisite for a particular voyage, so that it would not be safe or prudent to proceed to sea without it, which would be wholly unnecessary for the ordinary service of the vessel, and which could not be properly considered a part of her apparel or furniture. A chart, for example, might be indispensable to enable a master to navigate a vessel on an unaccustomed voyage and through unfrequented seas; but it would be entirely useless and without value in the prosecution of voyages to ports or places with which the master was familiar. Such an article could hardly be called a part of the apparel or furniture of the vessel, nor could it be deemed necessary or reasonably fit and proper while the vessel was pursuing her accustomed voyages; and yet the master would be authorized to procure it, if the exigencies of the vessel in the prosecution of a particular voyage seemed to render it necessary. The true and only test by which to determine whether the master has acted within the limits of his authority is, to ascertain whether the articles or supplies, whatever may be their nature, were necessary under the circumstances in which the vessel was

placed.   No abstract rule can be laid down by which certain articles are in all cases to be included as coming within the authority of the master to procure on the credit of his owners, and others are to be excluded as falling without the limits of such authority.   The necessity may vary according to the circumstances of each particular case, and when called in question in an action at law, it can only be determined by a jury, on a consideration of all the facts which go to make up the exigencies and requirements of the vessel at the time the articles were procured and the credit given.   Of course we speak only of articles designed and intended for the use of the vessel.   Articles of a purely personal nature, obtained by the master for his own use and convenience, can never in any legitimate sense be deemed necessaries for which the owners can be liable.   But it is otherwise with supplies and implements which are used exclusively for purposes connected with the navigation of the vessel, and which are reasonably fit and proper for the prosecution of the voyage on which a vessel is bound.   In regard to them no definition can be given of the word " necessaries" which will furnish an absolute and fixed standard by which to determine the liability of the owners.   For these reasons, we are of opinion that an error was committed at the trial, in attempting to limit the signification of the word by confining it to articles which could be properly deemed part of the apparel or furniture of the vessel.

There was another error in the ruling of the court, which may have worked a prejudice to the plaintiffs' case.   It consisted in an inaccurate and improper application of the evidence offered on the subject of usage.   We do not understand that this evidence was introduced for the purpose of showing a usage that a master of a vessel in a particular foreign port had no authority to bind his owners for necessaries furnished to he vessel.   Such a usage would contradict and control a settled ule of maritime law, of universal application, and would have been clearly illegal and inoperative to deprive the master of the authority vested in him by law.   *Dickinson* v. *Gay*, 7 Allen, 32, and cases cited.   The object of the evidence was much more

limited. It tended to prove that a chronometer was not necessary, by showing that owners did not furnish it to masters, but that it was procured by the latter for their own convenience and at their own cost. For this purpose it was clearly admissible and competent, and in this view it was relevant to the issue which it was incumbent on the plaintiffs to prove. But under the instructions given to the jury it was allowed to have a very different effect. Taken in connection with the prayer for instructions submitted by the counsel for the plaintiffs which was refused by the court, the jury were left to infer that, if the usage was proved as alleged by the defendants, they would not be liable for the use of the chronometer, although it might have been necessary for the vessel and reasonably fit and proper to be supplied. That was clearly erroneous, not only because it allowed a rule of law to be controlled by evidence of usage, but also because it gave a different effect to the evidence from that to which it was legitimately entitled.

On these grounds, we are of opinion that a new trial must be ordered. *Exceptions sustained.*